No. 34,364

THE STATE OF KANSAS, ex rel. JAY SULLIVAN, County Attorney of Lyon County, *Plaintiff,* v. LEONARD G. HICKMAN, Vehicle Commissioner of the State of Kansas, *Defendant.*

(89 P. 2d 903)

Opinion filed May 6, 1939.

*Jay Sullivan,* county attorney, and *Everett E. Steerman,* of Emporia, for the plaintiff.

*Jay S. Parker,* attorney general, *C. Glen Morris* and *Eldon Wallingford,* assistant attorneys general, and *Thomas C. Lysaught,* of Kansas City, for the defendant.

*Charles W. Steiger, Walter A. Steiger,* both of Topeka, *Thomas E. Joyce,* of Kansas City, *J. W. Blood* and *Francis Prosser,* both of Wichita, for the intervening defendants.

The opinion of the court was delivered by

Smith, J.: This is an original proceeding in mandamus brought in the name of the state by a county attorney. After the alternative writ was issued by this court certain additional parties were made defendants and other parties were given leave to and did intervene. The cause was submitted to this court on the motion of the defendant, who is represented by the attorney general, to quash the alternative writ. The end sought by all parties is an adjudication as to the provisions of certain statutes that have to do with the license fees to be paid by motor-truck owners.

The petition first alleged the official capacity of the county attorney who brought the action, and that the defendant Hickman was vehicle commissioner, and, among his other duties, he had authority over the county treasurers of the various counties of the state in the collection of motor-vehicle registration fees, and as such issued instructions to the county treasurers by which the county treasurers determined the amount of fees to be collected from the truck owners. The petition then quoted G. S. 1937 Supp. 8-126 as to the definition of a truck; also, G. S. 1935, 8-143, which provides the registration fee to be charged truck owners, and G. S. 1937 Supp. 8-129, which provides the information which must be on the application of a truck owner for a license. The petition then set out the instruction issued by the commissioner which is in question here. This instruction is as follows:

"APPLICATIONS FOR REGISTRATION OF TRUCKS AND TRAILERS. The registration fees for trucks and trailers are to be determined in accordance with the schedule prescribed by section 8-143, General Statutes of 1935. *Fees are based on the owner declared rate carrying capacities* and the fees prescribed by statute have heretofore been furnished you. The owner must declare *his own rated carrying capacity of his truck,* or trailer, regardless of the rated carrying capacity specified by the manufacturer or maker of same; provided, however, that the owner cannot declare the capacity less than that fixed by the manufacturer; and provided further, that the owner may not declare the capacity at more than double the capacity fixed by the manufacturer of such vehicle. When a trailer or semitrailer is attached to a truck or truck tractor, the owner cannot declare the carrying capacity of the trailer or semitrailer at more than double the carrying capacity of the truck tractor pulling such trailer or semi-

trailer. *Correct empty weights of both trucks and trailers must be shown on the applications.* In no event should owners be permitted to declare a rated carrying capacity so high that a pay load of 200% *of such owner declared rated carrying capacity plus the empty weight of the vehicle* will result in a maximum gross weight in excess of the limitations set forth in sections 8-5,119 and 8-5,120, G. S. 1937 Supp." (Italics ours.)

The petition then alleged that in arriving at an interpretation of the statutes upon which this instruction was based the commissioner gave consideration to G. S. 1937 Supp. 8-5,120, which reads, in part, as follows:

"(c) Each vehicle to which this act applies shall display a tag in accordance with the requirements of the state vehicle commissioner, *giving the owner-declared rated capacity of the unit,* provided that no owner-declared capacity shall be less than that fixed by the manufacturer of said vehicle and no unit shall be loaded *to exceed two hundred percent* of such declared rated capacity. (d) It shall be unlawful for any person to operate any vehicle or combination of vehicles of a gross weight in excess of the limitations set forth in this act, or loaded in excess of 200 percent of the owner-declared rated carrying capacity." (Italics ours.)

The petition then alleged that it was wrong for the commissioner to consider this statute, because it pertained only to the regulation of traffic on the highways and was not applicable to the fees to be charged truck owners. The petition then alleged that the commissioner had no discretion in the matter, but was bound by the statute, and that by virtue of this instruction the county treasurers were registering motor trucks in their respective counties upon the basis of the manufacturer's rated carrying capacity where the truck had been so rated, and in those cases where there was no manufacturer's rated carrying capacity, then at the very minimum of the carrying capacity of the truck; that this gave the owners the benefit of the provisions of the statute quoted above providing for the 200 percent overload. The petition then alleged that the effect of this construction was that the owner of a truck with a carrying capacity of 8,000 pounds, and upon which the manufacturer had declared a rated carrying capacity of 4,000 pounds, was paying a $30 registration fee instead of a registration fee of $100, as provided in the statutes relative to registration of motor trucks; that by reason of this practice plaintiff was being deprived of revenue per annum in an amount estimated to be more than $1,000,000.

The prayer was for a writ directing the commissioner to instruct the county treasurers to collect registration fees upon trucks upon

the basis of the owner's declared carrying capacity of his truck in pounds.

Subsequent to the issuance of the alternative writ the plaintiff asked that the county treasurer of the county in which the county attorney who brought the action served be made a party defendant. This motion was allowed.

This treasurer answered, admitting that she followed the instruction sent out by the commissioner. The answer further alleged that in no case had she permitted an owner of a truck to register it at less than the manufacturer's rated carrying capacity nor at more than double the manufacturer's rated carrying capacity, even though the truck might be capable of carrying a load greatly in excess of double the manufacturer's rated carrying capacity. This defendant asked that the peremptory writ be denied.

The Kansas Motor Carriers Association and certain of its members who are engaged in the business of common carriers by motor asked that they be given permission to intervene. This permission was given.

In this answer they alleged R. S. 1923, 8-105, dealt with motor-truck registration fees and R. S. 1923, 8-104, provided that for the purposes of the act the gross weight and carrying capacity should be that specified and advertised by the manufacturer; that chapter 206 of the Laws of 1925 provided for motor-truck fees according to the rated carrying capacity of the truck, and that this should be based on the "manufacturer's rated capacity"; that section 21 of chapter 81 of the Laws of 1929 provided for motor trucks having a "rated carrying capacity," and section 1 of that act defined "manufacturer" as a person engaged in the business of manufacturing "motor vehicles, trailers or semitrailers"; that section 13 of chapter 236 of the Laws of 1931 provided:

"The said gross ton mileage shall be computed: (a) The maximum seating capacity of each passenger-carrying vehicle shall be estimated at 150 pounds per passenger seat; to this sum shall be added the weight of the vehicle, the total shall then be multiplied by the number of miles operated, and the amount thus obtained divided by 2,000; (b) 200 percent of the rated capacity of each property-carrying vehicle plus the weight of the vehicle shall be multiplied by the number of miles the vehicle is operated, and the amount thus obtained divided by 2,000."

The answer then alleged that section 5 of chapter 244 of the Laws of 1931 provided as follows:

"Each vehicle to which this act applies shall display a tag in accordance with the requirements of the state highway commission giving the rated capacity of such unit, and no unit shall be loaded to exceed 200 percent of such rated capacity."

The answer then alleged that from 1923 to 1937 it was the intention of the legislature that the manufacturer's rated capacity should be the measure of the license and that it was the intent that no vehicle should be loaded in excess of 200 percent of this capacity; that at the regular session of the legislature in 1937 the legislature adopted the uniform safety code, and among sections repealed was the provision with reference to the prohibition against an overload of 200 percent of the rated capacity; that the special session of the legislature of 1938 amended the above act by providing in section 5 (d) of chapter 58 of the Laws of 1938, special session, as follows:

"It shall be unlawful for any person to operate any vehicle or combination of vehicles of a gross weight in excess of the limitations set forth in this act or loaded in excess of 200 percent of the owner-declared rated carrying capacity."

And section 5 also provided:

"No owner-declared capacity shall be less than that fixed by the manufacturer of said vehicle and no unit shall be loaded to exceed 200 percent of such declared rated capacity."

The answer then quoted a portion of the instruction given by the commissioner and then alleged that it was a correct interpretation of the law.

The prayer was that the peremptory writ be denied.

Another group of motor-truck operators secured permission to intervene. They alleged that the instructions in question complied with the law, and prayed that a peremptory writ be denied.

Although pleadings were filed by various parties, there is no dispute about the facts.

At the outset of this discussion we will set out the statute that provides for the registration fee for trucks. It is G. S. 1935, 8-143, and reads as follows:

"All applications for the registration of motor trucks, except as otherwise herein provided, shall be accompanied by an annual license fee as follows: *For motor trucks having a rated carrying capacity of 1,000 pounds or less,* five dollars ($5). *For motor trucks having a rated carrying capacity of over 1,000 pounds and not over one ton,* seven dollars fifty cents ($7.50). For motor trucks having a rated carrying capacity of over one ton and not over one and one-half tons, ten dollars ($10); for motor trucks having a rated carrying capacity of over one and one-half tons and not over two tons, thirty dollars

($30); for motor trucks having a rated carrying capacity of over two tons and not over two and one-half tons, fifty dollars ($50); for motor trucks having a rated carrying capacity of over two and one-half tons and not over three tons, seventy-five dollars ($75); for motor trucks having a rated carrying capacity of over three tons and not over four tons, the sum of one hundred dollars ($100); for motor trucks having a rated carrying capacity of over four tons and not over five tons, one hundred fifty dollars ($150); for motor trucks having a rated carrying capacity of over five tons, fifty dollars ($50) for each ton or (of) rated carrying capacity or fraction thereof: . . . "

It will be noted that before the county treasurer can ascertain what license a motor truck should pay he must know what the "rated carrying capacity" of the particular truck is. The decision in this case turns upon what meaning we give that phrase. The plaintiff asks that the peremptory writ direct the commissioner to instruct the county treasurers to collect registration fees based on the owner's declared carrying capacity of the truck. The instructions furnished by the commissioner to the treasurers are that "fees are based on the owner's declared rated carrying capacities," and further, "the owner must declare his own rated carrying capacity of his truck or trailer, regardless of the rated carrying capacity specified by the manufacturer." The plaintiff finds no fault with that much of the instruction. It is the following language to which plaintiff takes exception:

"And provided further, that the owner may not declare the capacity at more than double the capacity fixed by the manufacturer of such vehicle. When a trailer or semitrailer is attached to a truck or truck tractor, the owner cannot declare the carrying capacity of the trailer or semitrailer at more than double the carrying capacity of the truck tractor pulling such trailer or semitrailer. *Correct empty weights of both trucks and trailers must be shown on the applications.* In no event should owners be permitted to declare a rated carrying capacity so high that a pay load of 200 percent *of such owner-declared rated carrying capacity plus the empty weight of the vehicle* will result in a maximum gross weight in excess of the limitations set forth in sections 8-5,119 and 8-5,120, G. S. 1937 Supp."

It is the contention of the defendants that the provisions of G. S. 1937 Supp. 8-5,119 and 8-5,120 provide that the owner of a motor truck may declare the capacity of his truck and haul 200 percent of that much load. Thus a truck owner may declare his truck to have a capacity of 4,000 pounds and pay a registration fee of $30 and haul 8,000 pounds under that registration, while the plaintiff contends that if the truck will carry 8,000 pounds the owner must declare that to be the capacity and pay a registration fee on that weight, or, in the case of the truck of which we speak, $100 for a four-ton truck.

A conclusion as to the construction to be put on G. S. 1935, 8-143, requires an examination of its legislative lineage. The story begins with the session of 1913. Chapter 65 of the Laws of 1913 provided for the registration of motor vehicles with the secretary of state and for a fee of $5. This act was amended from time to time in respects with which we are not interested. At the session of 1921 we find that for the first time the legislature took notice of the different treatment that should be accorded motor trucks. It is worthy of note that about this time the question of improving the highways of the state was in the forefront of every discussion of public affairs. At any rate, the statutes up to that time had only made a distinction between motorcars and motorcycles. (See Laws of 1919, ch. 88.) Chapter 69 of the Laws of 1921 defined the term "motor truck" and provided that the owner should give the carrying capacity of the truck when applying for a license, and that the carrying capacity of all motor trucks should be that specified and advertised by the manufacturer. The act further provided that the license to be paid on a motor truck should depend on the carrying capacity of the particular truck. This was the first effort of the state to make a big truck pay more than a smaller one, on the theory that the heavy truck was harder on the highways. Nothing was done on this subject at the session of 1923, but at the session of 1925 chapter 83 was passed. As to motor trucks, the main change made was that a truck with a rated carrying capacity of 800 pounds or less had to pay a fee of only $8, while under the act of 1921 the lowest fee was $15. The provision that the rated carrying capacity should be that advertised by the manufacturers was not changed. By chapter 274 of the Laws of 1925 a tax of two cents a gallon was put on gasoline used to propel motor vehicles on the highway. Another new departure put into effect by the 1925 legislature was chapter 206, by the provisions of which the legislature conferred on the public utilities commission the authority to regulate the operation of motor carriers operating over the highways of the state between fixed termini. Section 6 of this act set out fees to be paid in addition to the registration fee. The section contained the following language:

"For each motor vehicle used for transporting property between fixed termini or over a regular route the manufacturer's rated carrying capacity of which is one and three-fourths tons or less, forty dollars."

The use of the phrase "manufacturer's rated carrying capacity" should be noted. The next change in the statutes relative to regis-

tration of motor carriers was at the session of 1929. At that session chapter 81 was enacted. Section 1 of that chapter went into detail in defining truck tractors, trailers, semitrailers, specially constructed vehicles, and reconstructed vehicles. Section 7 provided the information that should be furnished by a truck owner. The section contained the following proviso:

"*Provided,* That for the purpose of this act the gross weight of all motor vehicles and the carrying capacity of all motor trucks shall be that specified and advertised by the manufacturer or maker thereof." (Laws 1929, ch. 81, § 7.)

Section 21 of the act provided the fees to be paid for registering trucks, and that these fees should be graduated according to the rated carrying capacity. Clearly, according to all the provisions of this chapter, the words "rated carrying capacity" meant the carrying capacity advertised by the manufacturer. It will be remembered that in chapter 206 of the Laws of 1925 the legislature conferred on the public utilities commission authority to regulate the operation of motor carriers between fixed termini along the highways of the state. It should be noted, also, at this point that chapter 222 of the Laws of 1929 amended chapter 206 of the Laws of 1925 in some details not important here. Chapter 236 of the Laws of 1931 altered both the above chapters. This chapter provided an extensive plan for the regulation of motor carriers. Section 13 of the act provided for a "ton mileage tax" for motor carriers operating between fixed termini. The formula provided was as follows:

"In addition to the regular license fees or taxes imposed upon 'public motor carriers of property or passengers,' 'contract motor carriers of property or passengers,' and 'private motor carriers of property,' there shall be assessed against and collected from every such carrier a tax of five-tenths mill per gross ton mile for the administration of this act and for the maintenance, repair and reconstruction of the public highways. The said gross ton mileage shall be computed: (*a*) The maximum seating capacity of each passenger-carrying vehicle shall be estimated at 150 pounds per passenger seat; to this sum shall be added the weight of the vehicle, the total shall then be multiplied by the number of miles operated, and the amount thus obtained divided by 2,000; (*b*) 200 percent of the rated capacity of each property-carrying vehicle plus the weight of the vehicle shall be multiplied by the number of miles the vehicle is operated, and the amount thus obtained divided by 2,000."

Attention is called to subsection (*b*) of the above. This was not a license fee statute, but it introduced for the first time the idea that a truck could carry twice the rated capacity.

At the session of 1933 chapter 73 was enacted. This chapter amended chapter 81 of the Laws of 1929. Some changes were made

in the fees to be paid and they were still graduated according to the "rated carrying capacity." Chapter 236 of the Laws of 1933 was a traffic regulation statute. The end sought was the preservation of the highways as much as possible, as well as the safeguarding of the property and lives of people on the highway. In this act there was a limit put on the gross weight of trucks. The chapter, in section 5, also contained the following provision:

"Each vehicle to which this act applies shall display a tag in accordance with requirements of the state highway commission giving the rated capacity of such unit, and no unit shall be loaded to exceed 200 per cent of such rated capacity." (Laws 1933, ch. 236, § 5.)

At this point in the legislative history of our statute on the subject it will be noted that the limit set by the legislature for a motor truck to carry was twice the rated carrying capacity. The provisions of sections 1 to 10 of chapter 236 of the Laws of 1933 were carried into G. S. 1935, as 68-152 to 68-152 (j). These sections were all repealed by chapter 283 of the Laws of 1937. The section in which we are interested is G. S. 1935, 68-152 (d). This is the section which has already been quoted as section 5 of chapter 236 of the Laws of 1933.

Section 120 of chapter 283 of the Laws of 1937 set out certain gross weights which should not be exceeded by truck operators on the highways. One provision of this section was as follows:

"He shall register every such vehicle for a permissible gross weight not exceeding the limitations set forth in this act."

Subsection (c) of this section provided as follows:

"The commissioner shall insert in the registration card issued for every such vehicle the gross weight for which it is registered, and if it is a motor vehicle to be used for propelling other vehicles he shall separately insert the total permissible gross weight of such motor vehicle and other vehicles to be propelled by it. He may also issue a special plate with such gross weight or weights stated thereon, which shall be attached to the vehicle and displayed thereon at all times. It shall be unlawful for any person to operate any vehicle or combination of vehicles of a gross weight in excess of that for which registered by the commissioner or in excess of the limitations set forth in this act."

This section was amended by section 5 of chapter 58 of the Laws of 1938, Special Session. That section provided, among other things:

"(c) Each vehicle to which this act applies shall display a tag in accordance with the requirements of the state vehicle commissioner, giving the owner-declared rated capacity of the unit, provided that no owner-declared capacity shall be less than that fixed by the manufacturer of said vehicle and no unit shall be loaded to exceed two hundred percent of such declared rated capacity.

(d) It shall be unlawful for any person to operate any vehicle or combination of vehicles of a gross weight in excess of the limitations set forth in this act or loaded in excess of 200 percent of the owner-declared rated carrying capacity."

This is the first appearance in our statutes of the phrase "owner-declared capacity." At the same special session of the legislature chapter 11 was enacted. That chapter amended section 3 of chapter 72 of the Laws of 1937, now G. S. 1937 Supp. 8-129, by striking out of it the following provision:

"*Provided,* That for the purpose of this act the gross weight of all motor vehicles and the carrying capacity of all motor trucks shall be that specified and advertised by the manufacturer or maker thereof."

All these statutes and amendments cover the general subject of automobiles, roads and highways, traffic regulation and the collection of revenue from those who use the highways for profit. They must be construed together. When this is done it is clear the legislature adopted a policy of disregarding the carrying capacity of trucks as advertised by the manufacturer as a means of fixing the amount of license fee that should be paid by a truck owner.

So far the plaintiff's contention is that the provision of section 5 of chapter 58 of the Laws of 1938, Special Session, being G. S. 1937 Supp. 8-5,120, should not be considered in an interpretation of the statutes with reference to registration fees, because the chapter in question is clearly a traffic regulatory one. This position is not sound. We have traced the history rather carefully here so that we might demonstrate that the subjects are interrelated. The legislature has considered the whole matter of automobiles, trucks, highways, and the revenue to be derived therefrom at practically every session since 1913. We cannot say that it considered chapter 283 of the Laws of 1937, and chapters 58 and 11 of the Laws of 1938, Special Session, without regard to provisions of G. S. 8-143. The subject matter of the statutes is so closely related that they must be construed together. In giving the instruction of which complaint is made here the commissioner has followed the language of G. S. 1937 Supp. 8-5,120.

Plaintiff argues that the license fee should be collected upon the maximum load which the truck ever expects to carry, or 200 percent of the owner's rated carrying capacity. This would be a departure from the policy that has been followed by former vehicle commissioners for ten years or more. It would result in more than doubling

truck fees in many cases. This court would not order such a step unless the language of the statutes directed such action in clear and unmistakable language. We find no justification in the statutes for such a construction. G. S. 1935, 8-143, provides that the fees shall be collected on the basis of the rated carrying capacity of the trucks. We have demonstrated that this means owner's declared carrying capacity, not 200 percent of that.

The motion to quash is sustained and the peremptory writ is denied.